IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

KENNETH HOLLAND,

    Plaintiff,

    v.                                                  Civ. No. 10-374 BB/SMV

CHAD KROGSTAD, et al.,

    Defendants.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on motions for summary judgment filed by all parties. Having reviewed the submissions of the parties and the relevant law, the Court will DENY Plaintiff's motions for summary judgment [Doc. 117]; the Court will GRANT IN PART and DENY IN PART Defendant Krogstad's motion for summary judgment [Doc. 107]; and the Court will GRANT IN PART and DENY IN PART the remaining Defendants' motion for summary judgment [Doc. 112].

## FACTUAL AND PROCEDURAL HISTORY

In the summer of 2009, Defendants were employed as Forest Service Officers, as part of an "Incident Management Team" in New Mexico's Santa Fe National Forest. They helped police the annual "Rainbow Family Gathering," a month-long festival which takes place in various National Forests. The Rainbow Family Gathering is an opportunity for a loosely-structured group of like-minded citizens to pray for peace, exchange ideas, and typically, engage in some

level of substance abuse.  Unsurprisingly, the Family Gathering is also the habitual grounds for contentious clashes between attendees and law enforcement.

On July 3, 2009, Plaintiff Kenneth Holland ("Plaintiff") and his wife Brittany Holland ("Brittany") were attending the Gathering.  Brittany was driving Plaintiff and another passenger in her car when she saw several of the Defendant officers, turned her car around, pulled to the side of the road, left the car with a plastic jug of beer, and gave the beer to another Gathering attendee.

Officers Krogstad and Tembreull stopped Brittany and ordered the occupants out of the car.  The Officers took the jug of beer back to the car and cited Brittany for possessing an open container of alcohol in a vehicle.  As is common practice at the Family Gathering, the Officers filled out her violation information on a whiteboard, and instructed her to pose for an evidentiary photograph with it.  Officer Krogstad also ordered Plaintiff to pose for the evidentiary photograph, and handed him Brittany's jug of beer.  Plaintiff refused these orders and put the beer on the ground.

When Plaintiff refused Officer Krogstad's orders, Officer Krogstad ordered that Plaintiff be detained.  Officers Krogstad, Tembreull, Kalna, and Wubben (the "Arresting Officers") attempted to detain Plaintiff.  Plaintiff resisted and a struggle ensued.  During the struggle, Plaintiff may have made contact with Officer Krogstad, which the Officers allege was intentional.  As Plaintiff continued to resist, Officer Kalna tasered him.  Plaintiff was also pushed against his car, taken to the ground, and tasered a second time before being fully restrained and handcuffed by the Arresting Officers.

During the approximately fifteen minutes after Plaintiff first left the car until he was in handcuffs, numerous other officers were covering the scene.  Four of these officers, Defendants

Hayes, Testa, Maniscelco, and Humphrey (the "Cover Officers") were covering Plaintiff's arrest from a close distance.

After his arrest Plaintiff was held in jail for several days, and following a preliminary hearing, charged with assaulting an officer and interfering with an officer's duties. These charges were dismissed prior to trial.

Plaintiff now brings this suit under 42 U.S.C. § 1983.[1]  Plaintiff claims the Arresting Officers seized him unlawfully and with excessive force, in violation of the Fourth Amendment. Plaintiff claims the Cover Officers failed to intervene to prevent the above constitutional violations. Plaintiff also alleges malicious prosecution against all Officers. As discussed below, summary judgment is appropriate for each defendant on the claims of malicious prosecution. For the remaining claims of unlawful seizure, excessive force, and failure to intervene, summary judgment is not appropriate for any party.

## LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response to a motion for summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."

---

[1] *See Newton v. Lee,* 677 F.3d 1017, 1024 n. 12 (10th Cir. 2012) ("Under *Bivens,* an individual can seek damages from a federal official for a violation of his Fourth Amendment rights.") (citing *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 397 (1971)).

*Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

Here, Defendants assert qualified immunity on each claim. A motion for summary judgment that asserts qualified immunity is reviewed differently from other summary judgment motions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In § 1983 cases, qualified immunity provides an affirmative defense to government officials "for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1978)). However, qualified immunity will be denied if, taking the facts favorably to Plaintiff, he shows that at least one of his federal rights was violated and the right was "clearly established" at the time of the alleged violation. *Saucier,* 533 U.S. at 201.[2]

---

[2] In *Pearson v. Callahan*, the Supreme Court overruled *Saucier* in part, holding that these two factors may be analyzed in either order. 555 U.S. 223, 225 (2009).

## DISCUSSION

## I. UNREASONABLE SEIZURE

### A.   CONSTITUTIONAL VIOLATION OF UNREASONABLE SEIZURE

The Fourth Amendment protects the right of individuals to be free from unreasonable seizure and arrest.  U.S. CONST. AMEND. IV.  The reasonableness of a seizure depends on the degree of the intrusion of liberty:  full custodial arrests must be supported by probable cause; brief investigative detentions require a reasonable suspicion of criminal activity; and consensual encounters do not trigger the Fourth Amendment's protections.  *United States v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996) (citations omitted).  For the reasons below, a jury should decide when Plaintiff was first seized, and whether the seizure was reasonable.

#### 1.   A JURY SHOULD DECIDE WHEN PLAINTIFF WAS FIRST SEIZED

A seizure occurs when "a police officer accosts an individual and restrains his freedom to walk away." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1253 (10th Cir. 2007) (quoting *Terry v. Ohio*, 392 U.S. 1, 16 (1968)).  A seizure is distinguished from a consensual encounter based on whether "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *United States v. Drayton*, 536 U.S. 194, 202 (2002).  This is a factual inquiry hinging on such factors as:  whether the officers create a threatening presence; whether the officers display weapons; whether the officers physically touch the suspect; the location of the encounter; the presence of civilian witnesses; whether the officers are uniformed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects; and whether officers have advised the suspect that he had the right to terminate the encounter.  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *United States*

*v. Spence*, 397 F.3d 1280, 1283 (10th Cir. 2005). "Although no single factor is dispositive, the strong presence of two or three factors may be sufficient to support the conclusion a seizure occurred." *United States v. Lopez*, 443 F.3d 1280, 1284-1285 (10th Cir. 2006) (quotations omitted).

### i. Whether Plaintiff Was Seized by the Officers' Orders

Plaintiff contends that he was first seized, in the form of an investigative detention, when he was being given orders from the Arresting Officers. Absent physical force, a suspect is seized by an officer's orders only if the suspect "manifest[s] compliance" with them. *United States v. Martin*, 613 F.3d 1295, 1300 (10th Cir. 2010) (quotations omitted). Even though Plaintiff refused the order to hold Brittany's jug of beer, the record does not make clear which of the other orders, if any, Plaintiff complied with. The record also does not make clear, and the parties strongly dispute, the words exchanged and the overall tone of the encounter. Furthermore, considering the relevant factors, a reasonable person may not have felt free to terminate the encounter: Plaintiff was in the presence of at least nine armed and uniformed officers, Officer Krogstad approached Plaintiff with an authoritative demeanor, several officers had already detained Plaintiff's wife for nearly 20 minutes, and it appears Plaintiff was not allowed to return to his car. Factual disputes remain concerning whether Plaintiff was detained by the Arresting Officers' orders, or whether he was instead consenting to speak with the officers. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("a seizure does not occur simply because a police officer approaches an individual and asks a few questions").

### ii. Whether Plaintiff Was Seized by the Officers' Force

After Plaintiff refused to hold Brittany's jug of beer, Officers Kalna and Tembreull grabbed Plaintiff by the arms, pursuant to Officer Krogstad's orders to detain him. As Plaintiff

6

resisted, Officer Wubben also grabbed Plaintiff to detain him. Plaintiff contends this escalated the seizure from an investigative detention to a custodial arrest. While "there is no litmus-paper test for determining when an investigative detention enters the realm of an arrest," a custodial arrest is generally identified by "the involuntary, highly intrusive nature of the encounter." *Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th Cir. 2010) (quotations omitted). Furthermore, the use of forceful techniques typically indicate that an investigative detention has escalated into a custodial arrest. *Cortez v. McCauley*, 478 F.3d 1108, 1115-1116 (10th Cir. 2007).

The Officers contend that because Plaintiff continued to struggle and resist, he was not yet arrested, nor otherwise seized, until he was fully subdued and handcuffed. Indeed, to be seized by force, the force must have a significant effect on the individual's freedom of movement. *California v. Hodari D.*, 499 U.S. 621, 628-29 (1991). Moreover, the Tenth Circuit has noted that in the context of a *fleeing* suspect, a seizure cannot occur without "intentional acquisition of physical control" over the suspect. *Brooks v. Gaenzle*, 614 F.3d 1213, 1221 (10th Cir. 2010). However, "what may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." *Brendlin v. California*, 551 U.S. 249, 262 (2007). Not every suspect must be completely and permanently constrained by physical force to be seized. *See id; see also, e.g., Lemery v. Beckner*, 323 Fed. Appx. 644, 649 (10th Cir. 2009) (a suspect was seized by officer force when he was "momentarily stopped before running away").

In this case, Plaintiff was struggling but not fleeing. The video evidence does not make clear when Plaintiff's freedom of movement was significantly restrained and controlled by the Arresting Officers. Reasonable minds could differ as to when Plaintiff was first arrested, or

7

otherwise seized. Therefore, a jury should determine when Plaintiff was first seized, and at what point the seizure constituted a custodial arrest.

### 2. A JURY SHOULD DECIDE IF THE SEIZURE WAS REASONABLE

The justification needed to reasonably seize Plaintiff will depend on whether a jury classifies his seizure as an investigative detention or a custodial arrest. An investigative detention, also called a Terry stop, must be "justified at its inception" by a reasonable and articulable suspicion of criminal activity. *Terry,* 392 U.S. at 20; *Gallegos*, 114 F.3d at 1028. During an investigative detention, the officers' tactics must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 30; *Gallegos*, 114 F.3d at 1028. Typically, an investigative detention is reasonable in scope when an officer poses "a moderate number of questions to determine [a suspect's] identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty*, 468 U.S. 420, 439-440 (1984).

An officer may expand the scope of an investigative detention for numerous reasons, but "an unreasonable level of force transforms a Terry detention into an arrest requiring probable cause." *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (quotations omitted). Probable cause exists where, under the totality of the circumstances, a reasonable person would believe that a suspect has been or is committing a crime. *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008). As explained below, issues remain as to whether Plaintiff's detention was supported by probable cause, reasonable suspicion, or neither.

#### i. Whether the Seizure Was Reasonable Based on Plaintiff's Suspected Crimes

The Officers assert that Plaintiff was arrested for possessing an open container of alcohol in a vehicle, for interfering with a forest service officer, and for assaulting a federal officer. The Officers claim they initially suspected Plaintiff of possessing an open container of alcohol, in

8

violation of NMSA § 66-8-138 (2012). Thus Officer Krogstad ordered Plaintiff to pose for an "evidentiary photograph" while holding beer gathered from Brittany's open container violation. When Plaintiff refused, the officers claim they suspected him of interfering with a forest service officer, in violation of 36 C.F.R. 261.3(a), and began to detain him. In response, Plaintiff physically resisted and Officers then claim they suspected him of assaulting an officer, in violation of 18 USCS § 111.

*Open Container Violation.* The Officers claim they initially suspected Plaintiff of possessing an open container of alcohol and detained him. However, the scope of the detention arguably became unreasonable when Plaintiff was ordered to hold evidence from someone else's crime, and pose for a photograph. Such orders do nothing to confirm or dispel suspicions of Plaintiff's own criminal conduct. *See Berkemer*, 468 U.S. at 439-440. The Officers do not explain how orders to hold Brittany's contraband and pose for Brittany's citation photograph were reasonably related to Plaintiff's detention. Furthermore, the Officers allege no facts to suggest their investigation ever garnered probable cause to arrest Plaintiff for possessing an open container of alcohol. Therefore, summary judgment is not appropriate for the Defendants. Summary judgment is also not appropriate for Plaintiff because a jury could find that even if the Officers acted unreasonably, they had not yet sufficiently seized Plaintiff to trigger the Fourth Amendment's protections. *See* discussion *supra* Part I.A.1.

*Interfering With a Forest Service Officer.* Civilians are prohibited from "interfering with any forest officer engaged in or on account of the performance of his official duties." 36 C.F.R. 261.3(a). This regulation applies only when an officer is engaged in an 'official duty.' *United States v. Willfong*, 274 F.3d 1297, 1300-01 (9th Cir. 2001). The Officers argue that ordering Plaintiff to hold Brittany's jug of beer was an 'official duty' because it furthered the investigations into Plaintiff's and Brittany's crimes within the National Forest. However, the Officers do not explain how their orders furthered any legitimate investigation. If the Officers were investigating

Plaintiff, then the orders did nothing to confirm or dispel suspicions of his guilt. If the orders were not based on any suspicion of Plaintiff's wrongdoing, but instead meant to assist with Brittany's investigation, then Plaintiff was not required to assist. *See United States v. Muhammad,* 463 F.3d 115, 123 (2d Cir. 2006) ("An individual approached by an officer who has no reasonable suspicion of wrongdoing may ignore the officer and go about his business, and his refusal to cooperate may not form the basis for his detention.") (citing *Florida v. Royer,* 460 U.S. 491, 498 (1983)); *Galletta v. Deasy*, 9 Fed. Appx. 909, 913 (10th Cir. 2001) (in general, when "an officer does not have the right to order a person to comply," no crime is committed by a refusal to do so).

The Officers state that their orders need not be justified because any order they give is an inherently lawful one within the scope of their duties, which a civilian must follow. The relevant testimony reads:

> A: I gave him an order to do something. That is a lawful order.
> . . . .
> Q: But if he'd not committed a crime, would it have been a lawful order?
> A: Yes.
> Q: Why would it have been a lawful order?
> A: A police officer ordered him to do something at that time.

[Krogstad Depo. at 53:11-54:12]. However, not every order is inherently lawful or within the scope of an officer's official duties. *Cf. United States v. Scotford*, 302 Fed. Appx. 561, 563 (9th Cir. 2008) (a forest service officer was found to engage in an official duty when he ordered a suspected snowmobiler to stop near the boundaries of restricted, protected habitats). Furthermore, the Officers have not shown that "interfering" with an officer under 36 C.F.R. 261.3(a) can include refusing orders to hold another civilian's jug of beer for that civilian's citation photograph.

Finally, Plaintiff suggests, and a jury could reasonably conclude, that the Officers' true aim was to inculpate Plaintiff for Brittany's crime, without accurate evidence of Plaintiff's guilt [*see*

10

Doc. 125 at 21]. Similarly, a jury could find that when the Officers arrested Plaintiff, they were simply retaliating against his insubordination, without reasonable suspicion that a crime had been committed under 36 C.F.R. 261.3(a). Therefore, although the Arresting Officers contend that Plaintiff was arrested for failing to follow lawful orders, a jury could find that the orders and the arrest were clearly unlawful.

*Assaulting a Federal Officer.* The Officers assert that after they began to detain Plaintiff, he broke free from their grasp and punched Officer Krogstad in the back. Indeed, this would create probable cause for Plaintiff's arrest. *See* 18 USCS § 111 (prohibiting civilians from forcibly assaulting a federal officer engaged in his official duties). However, Plaintiff denies punching Officer Krogstad. While he concedes resisting the detention, he argues that his physical resistance was minimal and could not be reasonably construed as an assault. *See State v. Phillips*, 203 P.3d 146, 149 (N.M. App. 2008) (civilians may use reasonable resistance against an unlawful arrest, "but not to the extent of excessive violence"). The record evidence does not make clear whether Plaintiff contacted Officer Krogstad, or with what degree of force or volition. A jury should determine whether the Officers were reasonable to believe that Plaintiff assaulted Officer Krogstad, or whether Plaintiff could be suspected of any other crimes to justify his seizure.

  **ii.**  **Whether the Seizure Was Reasonable Based on Officer Safety**

Officers conducting an investigative detention are permitted to use objectively reasonable means "to protect their personal safety and to maintain the status quo." *Gallegos*, 114 F.3d at 1028-1029) (internal quotations omitted). The Arresting Officers here assert they seized Plaintiff to protect their own safety. The Officers mainly contend that their safety was jeopardized when Plaintiff assaulted Officer Krogstad. However, as discussed above, a jury should determine whether the Officers were reasonable to believe that an assault took place.

The Arresting Officers also contend their safety was jeopardized even prior to the alleged assault. They claim that from the outset, Plaintiff used threatening, "pre-assaultive" behavior, including gritting his teeth, clenching his fists, and speaking belligerently. Yet the record evidence suggests the contrary: the video evidence shows that prior to the use of force, Plaintiff maintained a defensive posture; Plaintiff did not make any physical threats or aggressive gestures; and while Plaintiffs' words were inaudible, the Officers do not even allege that Plaintiff verbally threatened them. Instead, the only evidence approximating aggressive behavior is the Officers' disputed testimony that Plaintiff used profane language in a non-threatening manner [Doc. 122 at 4].[3] This is not sufficient to reasonably deem Plaintiff a safety threat. *See, e.g., United States v. McKinney*, 9 Fed. App'x 887, 889 (10th Cir. 2001) (twice telling an officer to "go fuck himself" is neither a threat nor fighting words).

It appears clear that Plaintiff posed no safety threat during his initial encounter with the Officers. However, he may have posed a threat thereafter. Efficiency warrants submitting to a jury the entire matter of Plaintiff's disputed safety threat. *See Andrew v. Clark,* 561 F.3d 261, 271 (4th Cir. 2009) ("Even where summary judgment is appropriate on the record so far made in a case, a court may properly decline, for a variety of reasons, to grant it.") (internal citations omitted). Therefore, a jury should decide when, if ever, Plaintiff's seizure was justified to protect the Officers' safety.

---

[3] The officers contend that Plaintiff called Officer Krogstad a "fucking asshole" and said "fuck you" [Doc. 108 at 9]. Plaintiff contests this, and claims to have instead said "that's not my fuckin' beer."

In sum, a jury should determine when Plaintiff was first seized, and at what point his seizure constituted a full custodial arrest.  A jury should also determine whether that seizure was reasonable based on either Plaintiff's suspected crimes or his potential threat to officer safety.

B. **CLEARLY ESTABLISHED LAW OF UNREASONABLE SEIZURE**

Even if the Officers violated Plaintiff's right to be free of an unreasonable seizure, they will be entitled to qualified immunity unless "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).  Whether a law is clearly established for the purposes of qualified immunity "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Buck*, 549 F.3d at 1286 (internal quotations omitted).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Morris*, 672 F.3d at 1196 (quoting *Saucier*, 533 U.S. at 202).

As discussed above, taking the facts and reasonable inferences in the light most favorable to Plaintiff, a reasonable officer would clearly know that it was not lawful to inculpate Plaintiff for Brittany's open-container violation, without any evidence of Plaintiff's guilt.  Likewise, a reasonable officer would clearly know it is not lawful to retaliate against Plaintiff when he sought to avoid being framed for another's crime.  Finally, no reasonable officer would deem Plaintiff a safety threat when, at most, he grazed one officer's back while three other officers were physically forcing him into detention.  Therefore, the Arresting Officers are not entitled to qualified immunity.

## II. EXCESSIVE FORCE

The Fourth Amendment of the Constitution prohibits officers from using excessive force when seizing an individual, and limits officers to an "objectively reasonable" amount of force. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005). The 'objectively reasonable' standard does not lend itself to "mechanical application," but instead hinges on an evaluation of "the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. Courts evaluate each case while focusing on: (1) the severity of the suspect's crime; (2) whether the suspect posed an immediate threat to safety of the officers and others; and (3) whether the suspect was actively resisting arrest. *Id.* Tenth Circuit courts apply these factors "acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Marquez*, 399 F.3d at 1220.

### A.  CONSTITUTIONAL VIOLATION OF EXCESSIVE FORCE

In this case, each *Graham* factor is the source of significant factual dispute. As already discussed, Plaintiff's threat level is disputed. Plaintiff's level of resistance is disputed as well. Plaintiff contends that he flailed his arms while being arrested, but was then immediately tasered without warning, pushed against a car, pushed to the ground, and tasered again. The Officers contend that Plaintiff snapped his arms from their grasp, punched Officer Krogstad, and continued to physically resist arrest until he was in handcuffs. They allege that during this time, each method of force was unsuccessful, and each was preceded with a verbal warning to cease resisting.

Plaintiff's underlying crime is the subject of further factual dispute. The Officers contend that Plaintiff committed three crimes by interfering with a forest service officer, assaulting a

14

federal officer, and possessing an open container of alcohol in a vehicle.  As has been previously discussed, material issues remain as to whether Plaintiff was truly arrested for interfering with or assaulting any forest service officers.  Turning to the the open-container violation, this crime is a nonviolent misdemeanor.  NMSA § 66-8-139 (1978).  Furthermore, Plaintiff suggests that he was not truly being arrested for this crime.  His name did not appear on the citation or citation whiteboard.  During the seventeen minutes leading up to his arrest, the Officers said nothing to indicate that Plaintiff was charged with an open container violation.

The parties have starkly divergent recitation of the facts, which largely cannot be resolved by the record evidence.  "The very essence of [a jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable.  *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1158 (10th Cir. 1981); *Murray v. Crawford*, 689 F. Supp. 2d 1289, 1295 (D. Colo. 2010).  Therefore, a jury should decide whether the Arresting Officers used excessive force against Plaintiff.

B.  CLEARLY ESTABLISHED LAW OF EXCESSIVE FORCE

The right be free of excessive force, and the objectively reasonable standard under which that right is analyzed, are both "clearly established" for the purposes of qualified immunity.  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1313-14 (10th Cir. 2002) (quoting *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995)).  For the purposes of qualified immunity, "*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007) (citing 490 U.S. at 396).

Under the version of the facts most favorable to Plaintiff, he was arrested for, at most, a non-violent misdemeanor, he posed no safety threat, and he only minimally resisted arrest.  In

response, he was grabbed by three officers, tasered, pushed into a car, pushed to the ground, and tasered again. Thus, under Plaintiff's version of the facts, his right to be free of excessive force was clearly violated by the Arresting Officers. Likewise, the Arresting Officers are not entitled to qualified immunity.

### III. FAILURE TO INTERVENE

It is clearly established that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). To be liable under § 1983 for failing to intervene, an officer must have "a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights." *Fillmore v. Page*, 358 F.3d 496, 505-06 (7th Cir. 2004).[4] Thus, an officer will be liable for failing to intervene if he had reason to know that a constitutional violation was being committed, and had a realistic opportunity to prevent the harm from occurring. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Here, only the Defendants move for summary judgment. The Cover Officers, Humphrey, Hayes, Testa, and Maniscelco were within the proximity of the arrest, but each asserts that he was distracted by other duties such that he had no opportunity to perceive or prevent Plaintiff's arrest. Specifically, the Cover Officers assert they were busy managing a tumultuous crowd and controlling bystanders. However, the video evidence shows no such crowd. Video evidence

---

[4] Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation. *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). However, "any official who 'causes' a citizen to be deprived of her constitutional rights" is considered 'personally involved,' even without directly participating. *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008).

further shows that for over fifteen minutes leading up to Plaintiff's detention, numerous officers are doing little other than watching Plaintiff and Officer Krogstad from a moderate distance. When Officer Krogstad begins walking toward Plaintiff, these officers also walk toward Plaintiff, and encircle him [Holcombe Video 1, minute 17:43]. For the next forty seconds, these officers are clearly shown doing nothing other than watching Plaintiff intently, from a distance of less than twenty feet, with no visual obstacles [17:43-18:25]. Five seconds after that, Plaintiff is detained, and the camera has moved away from the officers [18:30].

      Presuming the officers in the video are indeed Defendants Humphrey, Testa, Hayes, and Maniscelco, a reasonable jury could easily infer that the Cover Officers observed Plaintiff's detention, had the opportunity to intervene, and failed to do so. Although the video does not show the Cover Officers at the precise moment of Plaintiff's detention, it seems clear these officers are both watching and implicitly condoning, if not participating in the seizure. Officers Humphrey, Testa, and Hayes contend that just as Plaintiff was detained, they were so fully engaged in other duties that they were not even aware of the detention. Officer Maniscelco asserts that he was too far from Plaintiff at the time of the arrest to observe or prevent it, and that like the other officers, he was too busy policing bystanders to intervene. However, there is nothing in evidence to support the Cover Officers' assertion that they were policing a crowd, or that a crowd even existed. Rather, the evidence strongly indicates that they were fully focused on Plaintff's arrest. Therefore, summary judgment is not appropriate for the Cover Officers.

## IV. MALICIOUS PROSECUTION

Plaintiff alleges that because the Officers misrepresented facts that were used to criminally charge him, each defendant is liable for malicious prosecution under § 1983. As with any § 1983 claim, malicious prosecution claims must allege the violation of a federal right. *Becker v. Kroll*, 494 F.3d 904, 913-14 (10th Cir. 2007). When malicious prosecution claims arise prior to trial, they are governed by the Fourth Amendment's right to be free of unreasonable seizure. *Wilkins v. DeReyes*, 528 F.3d 790, 797 n. 4 (10th Cir. 2008). Such is the case here, because Plaintiff's charges were dismissed prior to trial. *See id; Becker*, 494 F.3d at 919. To prevail on a Fourth Amendment malicious prosecution claim, a plaintiff must show that an unreasonable seizure occurred after and pursuant to wrongful 'legal process.' *Wilkins*, 528 F.3d at 798; *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008).

Some circuits have stated that for warrantless arrests, an arraignment is sufficient 'legal process' to trigger a malicious prosecution claim. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 116-117; *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001); *Nieves v. McSweeney*, 241 F.3d 46, 54 (1st Cir. Mass. 2001); *Torres v. McLaughlin*, 163 F.3d 169, 177 (3d Cir. 1998) (a "constitutionally based malicious prosecution claim rests upon a post-arraignment deprivation of liberty"). Here, the record evidence shows that Plaintiff was placed in custody, attended a preliminary hearing, and was then released. Possibly, Plaintiff was arraigned at some point prior to his release. However, Plaintiff alleges no facts to demonstrate that he was seized following an arraignment. Furthermore, Plaintiff does not show that in the Tenth Circuit, an arraignment can be the 'legal process' necessary to trigger a malicious prosecution claim.

The Tenth Circuit has held that for warrantless arrests, the relevant 'legal process' can be the preliminary hearing. *Wilkins*, 528 F.3d at 798. Therefore, Plaintiff can sustain his malicious

prosecution claim under the Fourth Amendment if he shows that he was seized after his preliminary hearing. *See id.* However, Plaintiff was released from custody after his preliminary hearing. Plaintiff alleges no facts to suggest that the terms of this release were somehow sufficiently burdensome to constitute a Fourth Amendment seizure. *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005); *Kingsland v. City of Miami*, 382 F.3d 1220, 1236 (11th Cir. 2004); *Nieves v. McSweeney*, 241 F.3d 46, 56 (1st Cir. 2001); *Britton v. Maloney*, 196 F.3d 24, 29-30 (1st Cir. 1999) (all finding that that no seizure is created from typical pre-trial release conditions, such as receiving a summons, posting bond, restricting travel, and appearing in court). Therefore, Plaintiff has no claim for malicious prosecution, and summary judgment is appropriate for the Officers.

## CONCLUSION

Summary judgment is granted to the Officers on Plaintiff's claim of malicious prosecution. On the claims of unreasonable arrest, excessive force, and failure to intervene, summary judgment is denied to all parties.

Dated this 23rd day of August, 2012.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE